UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUREKA DIVISION

| | |
|---|---|
| LAURIE SUZANNE COLE,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br><br>Defendant. | Case No. 13-cv-03689-NJV   (NJV)<br><br>**ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT**<br>RE: DKT. NOS. 19, 22 |

## INTRODUCTION

Plaintiff, Laurie Suzanne Cole, seeks judicial review of an administrative law judge ("ALJ") decision denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. Doc. No. 19. Plaintiff's request for review of the ALJ's unfavorable decision was denied by the Appeals Council. *See* Administrative Record ("AR") 1-6. The decision thus is the "final decision" of the Commissioner of Social Security, which this court may review. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Both parties have consented to the jurisdiction of a magistrate judge. Doc. Nos. 5 & 18. The court therefore may decide the parties' cross-motions for summary judgment. For the reasons stated below, the court will grant Plaintiff's motion for summary judgment, and will deny Defendant's motion for summary judgment.

## LEGAL STANDARDS

The Commissioner's findings "as to any fact, if supported by substantial evidence, shall be

1   conclusive." 42 U.S.C. § 405(g).  A district court has a limited scope of review and can only set

2   aside a denial of benefits if it is not supported by substantial evidence or if it is based on legal

3   error.  *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).  Substantial

4   evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence

5   as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108

6   F.3d 978, 979 (9th Cir. 1997).  "In determining whether the Commissioner's findings are

7   supported by substantial evidence," a district court must review the administrative record as a

8   whole, considering "both the evidence that supports and the evidence that detracts from the

9   Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998).  The

10  Commissioner's conclusion is upheld where evidence is susceptible to more than one rational

11  interpretation. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## DISCUSSION

### I.   SUMMARY OF RELEVANT EVIDENCE

#### A.   Medical History

Plaintiff has been diagnosed, treated for, or has presented sufficient evidence to establish that she suffers from: depression; migraine headaches; multiple chemical sensitivities; chronic obstructive pulmonary disease/bronchitis; a history of low back pain and neck pain; a history of thyroid cysts; chronic fatigue syndrome; lymph node pain; and fibromyalgia.  AR 31 & 343.  On November 3, 2009, Plaintiff filed an application for DIB and SSI alleging an onset date of disability starting June 1, 2008.

On June 6, 2008, Plaintiff presented to the Family Heath Center Mission with complaints that her body was in "crisis."  AR 343.  An exam revealed no distress.  *Id*.  Plaintiff was examined by Dr. Gonzales on June 12, 2008, who noted that Plaintiff has endocrine issues, but that her cardiovascular and respiratory exams were unremarkable.  AR. 350.  On August 14, 2008, Dr. Ratnam evaluated Plaintiff for leucopenia which he determined was self-limited and that no intervention was needed.  AR 347.  In June of 2009, Plaintiff presented to the Valley Medical Arts Clinic with complaints of back and lower abdomen pain.  AR 373.  It was noted that Plaintiff suffers chronic fatigue syndrome, but her physical exam was otherwise normal.  AR 372-373.

2

On July 9, 2009, Plaintiff was examined by Dr. Stevens. AR 494. Dr. Stevens opined that Plaintiff was unable to work in any capacity, in any field of work, and diagnosed her with chronic fatigue syndrome. *Id*. In December of 2009, Dr. Stevens diagnosed Plaintiff "with significant brain fog consisting of decreased concentration, lack of focus, and short term memory loss." AR 400.

Dr. De Los Santos, Ph.D., a consultative examiner, completed a psychological evaluation of Plaintiff on March 10, 2010. AR 444-48. Dr. De Los Santos assessed Plaintiff a GAF score of 60, and opined that Plaintiff was "experiencing a depressed mood, yet will not acknowledge it" and that "[t]his problem contributes to [a] lack of concentration and forgetfulness." AR 447-48. However, during the exam, Plaintiff's "concentration and attention appeared adequate." AR 448.

On October 21, 2010, Dr. Somerville, Plaintiff's treating physician completed a medical source statement and diagnosed Plaintiff with chronic fatigue syndrome, among other things, and opined that Plaintiff suffered several symptoms including extreme fatigue and cognitive deficits. AR 523. Dr. Somerville also opined that Plaintiff was disabled and unable to work. AR 529. On June 10, 2011, Dr. Summerville found that Plaintiff's symptoms were consistent with the diagnosis of chronic fatigue syndrome. AR 497-98.

**B.     Testimony**

The ALJ held an initial hearing on June 7, 2011, where Plaintiff appeared without the assistance of counsel. At the hearing, Dr. Anabago,[1] a reviewing physician retained by the ALJ, testified that Plaintiff retained the ability to perform light work. AR 61. Following Dr. Anabago's testimony, Plaintiff informed the ALJ that the record was incomplete because it did not contain all of Plaintiff's medical records. AR 62 & 78. The ALJ instructed Plaintiff to, after the hearing, provide the ALJ with the doctors' names so that the ALJ could attempt to secure the records. AR 63-64. Dr. Boarder, a reviewing psychologist retained by the ALJ, also testified at the hearing that Plaintiff suffered impaired concentration and would have moderate limitations in her ability to

---

[1] The court notes that the Doctor's name is spelled Anabago in the hearing transcripts, but is spelled Anigbogu in the ALJ's decision. For the purposes of this opinon the court will refer to the Doctor as Anabago.

perform complex and detailed tasks, and deal with normal stress. AR. 66-67. Dr. Boarder also acknowledged that Dr. Stevens's report was the most recent report that had been reviewed and that it was "entirely possible that . . . [Plaintiff has] gotten worse since the other medical records were created." AR 71. Following the hearing Plaintiff faxed a list of doctors and addresses per the ALJ's instructions. *See* AR 286.

The ALJ held a supplemental hearing on October 4, 2011. Again, Plaintiff was unrepresented by counsel. Dr. Aguigifor,[2] a reviewing physician retained by the ALJ, testified that Plaintiff retained the ability to perform light work. AR 88. At no time during the second hearing did the ALJ make mention of the missing medical records, nor did he inform Plaintiff of any attempts to secure the records, or inquire as to Plaintiff's attempts to secure the records herself.

## II.   THE FIVE STEP SEQUENTIAL ANALYSIS FOR DETERMINING DISABILITY

A person filing a claim for social security disability benefits ("the claimant") must show that she has the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or is expected to last for twelve or more months. 20 C.F.R. §§ 416.920(a)(4)(ii), 416.909. The ALJ must consider all evidence in the claimant's case record to determine disability (*Id*. § 416.920(a)(3)), and must use a five-step sequential evaluation to determine whether the claimant is disabled (*Id*. § 416.920). "[T]he ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983).

Here, the ALJ evaluated Plaintiff's application for benefits under the required five-step sequential evaluation (AR 28-41):

At Step One, the claimant bears the burden of showing she has not been engaged in "substantial gainful activity" since the alleged date the claimant became disabled. 20 C.F.R. § 416.920(b). If the claimant has worked and the work is found to be substantial gainful activity,

---

[2] The court noted that the Doctor's name is spelled Aguigifor in the hearing transcripts, but is spelled Oguejiofor in the ALJ's decision. For the purposes of this opinon the court will refer to the Doctor as Aguigifor.

4

the claimant will be found not disabled. *Id*. The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. AR 30.

At Step Two, the claimant bears the burden of showing that she has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii), (c). "An impairment is not severe if it is merely 'a slight abnormality (or combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.'" *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (quoting S.S.R. No. 96–3(p) (1996)). The ALJ found that Plaintiff suffered the following severe impairments: depression; migraine headaches; multiple chemical sensitivities; chronic obstructive pulmonary disease/bronchitis; a history of low back pain and neck pain; a history of thyroid cysts; and chronic fatigue syndrome. AR 31.

At Step Three, the ALJ compares the claimant's impairments to the impairments listed in appendix 1 to subpart P of part 404. *See* 20 C.F.R. § 416.920(a)(4)(iii), (d). The claimant bears the burden of showing her impairments meet or equal an impairment in the listing. *Id*. If the claimant is successful, a disability is presumed and benefits are awarded. *Id*. If the claimant is unsuccessful, the ALJ assesses the claimant's residual functional capacity ("RFC") and proceeds to Step Four. *Id*. § 416.920(a)(4)(iv), (e). Here, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. AR 31. Next, the ALJ determined that Plaintiff retained the RFC "to perform light work" with some physical and mental restrictions. AR 34.

At Step Four, and pursuant 20 C.F.R. 416.920(a)(4)(iv),(e), the ALJ determined that Plaintiff could not perform her past relevant work as an occupational therapist. AR 39.

At Step Five, the ALJ found that considering Plaintiff's age of 48, education level, work experience, and RFC, and after consulting with a vocational expert, that "there are jobs that exist in significant numbers in the national economy" that Plaintiff can perform. *Id*. Specifically the ALJ identified the following jobs: "hand packager;" "equipment cleaner;" and "housekeeping cleaner." *Id*. Accordingly the ALJ determined that Plaintiff had "not been under a disability, as defined in the Social Security Act, from June 1, 2008, through the date of [the] decision." AR 41.

**IV.    ISSUESS PRESENTED**

Plaintiff presents three issues for this court's review of the ALJ's decision: (1) whether the "ALJ committed harmful error by failing to properly develop the case;" (2) whether the "ALJ committed harmful error by failing to adequately evaluate the severe impairment of chronic fatigue syndrome;" and (3) whether the "ALJ committed harmful error by failing to accord proper weight to the opinions and findings of [Plaintiff's] treating physician." Pl.'s Mot. Doc. 19 at 2. Because the court finds remand necessary as to the first issue, and as further explained below, the court declines to address the second and third issues presented.

## V. DISCUSSION

Plaintiff claims that the ALJ failed to properly develop the record by failing to assist Plaintiff in obtaining certain medical records in support of her claims. Pl.'s Mot. Doc. 19 at 5-6. Plaintiff also argues that her treating physician's records were either not obtained or not reviewed by the ALJ and claims that the ALJ erred by failing to address or correct Plaintiff's inability to access her official record due to technical difficulties. *Id.* 7-9. The Commissioner counters that the ALJ met his statutory duty to collect the records or attempt to collect the records and that it was Plaintiff who failed in her duty to procure all necessary records. Def.'s Mot. Doc. 22 at 1-4.

"The ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). "When the claimant is unrepresented . . . the ALJ must be especially diligent in exploring for all the relevant facts." *Id.* at 1150.

As outlined above, at the initial hearing, Plaintiff informed the ALJ that the record was incomplete. In response the ALJ instructed Plaintiff, on multiple occasions, to provide the ALJ with the names of the doctors whose records were missing within ten days of the close of the hearing. Plaintiff heeded the ALJ's instructions and faxed the ALJ a list of doctors. *See* AR 286. At the second hearing, the ALJ made no mention of the doctors or of any attempts to collect the records, neither did the ALJ inquire as to whether Plaintiff had secured the records or had any difficulties doing so. Shortly after the supplemental hearing, Plaintiff sent a second letter to the ALJ outlining her difficulties in accessing her official records on a computer disk and again

6

1   requesting the ALJ seek medical records from the previously listed doctors along with a list of
2   additional doctors. AR. 282-85.
3       A review of the administrative record reveals nothing regarding the ALJ's attempts to
4   secure the records. Accordingly, this court ordered the Commissioner to file a supplemental brief
5   outlining the ALJ's attempts to contact the doctors listed by Plaintiff in her letters. *See* Order of
6   June 25, 2014 Doc. 25. In response to that Order, the Commissioner outlined the ALJ's attempts
7   to receive medical records from several of Plaintiff's doctors, but conceded that the ALJ failed to
8   seek medical records from doctors Iglesias, Bermudez, and Cortes. *See* Def.'s Supp. Br. Doc. 28
9   at 3-4.
10      As to Doctor Iglesias, the Commissioner asserts that those records were not relevant in
11  time period and subject matter because they related to a food poisoning incident in 2005. *Id.* at 3.
12  This is not an accurate reading of the record. Plaintiff testified that she saw Dr. Iglesias in 2005
13  "for what we originally thought was food poising at the time" and that Plaintiff saw the doctor for
14  a month before being referred to a specialist. AR 64. The Commissioner argues that Doctor
15  Iglesias's records are irrelevant because the ALJ only has a duty to develop the record for "at least
16  the 12 months preceding the month" in which the application is filed.[3] Def.'s Supp. Br. Doc. 28 at
17  3-4. The Commissioner appears to ignore the "at least" portion of that phrase. Plaintiff was
18  alleging an ongoing problem, or at least a problem that was of a longer duration than merely a
19  "food poisoning incident." Indeed, Plaintiff testified that the 2005 incident that she originally
20  believed to be food poisoning was the origination for an illness from which she has been
21  "relapsing and going into remission ever since." AR 62. Thus, it is not so clear, as the
22  Commissioner would suggest, that Dr. Iglesias's records would fall outside of the relevant time
23  period, or be irrelevant to Plaintiff's claims.
24      As to Doctors Bermudez and Cortes, the Commissioner admits that the ALJ made no
25  attempt to contact those doctors or procure their records and offers no explanation for the ALJ's
26  failure. Instead, the Commissioner merely points to Plaintiff's duty to develop the record on her

---

[3] 20 CFR § 404.1512

7

1   own. *See* Def.'s Supp. Br. Doc. 28 at 3-4. However, "[w]hile a claimant bears the burden to

2   produce evidence supporting [her] claim, the Ninth Circuit has recognized that the ALJ shares this

3   burden and is under an 'affirmative duty to assist the claimant in the development of the record.'"

4   *Kittelson v. Astrue*, 533 F. Supp. 2d 1100, 1108 (D. Or. 2007) (quoting *Tackett v. Apfel*, 180 F.3d

5   1094, 1098 n.3 (9th Cir. 1999).

6   In addition, the ALJ's failure to even attempt to procure the medical records was

7   exasperated by Plaintiff's *pro se* status and mental limitations. The ALJ's responsibility to

8   develop the record is heightened when the claimant is unrepresented and suffers a mental

9   impairment. *See Higbee v. Sullivan*, 975 F.2d 558, 562 (9th Cir. 1992) (citing *Thompson v.*

10  *Sullivan*, 933 F.2d 581, 586 (7th Cir. 1991) ("When a claimant is both unrepresented *and* suffers

11  from a mental impairment . . . the ALJ's duty to carefully develop the record is even greater.")).

12  In this case, the RFC limits Plaintiff to be "able to understand, remember, and carryout short

13  *simple* instructions and maintain attention and concentration for extended periods on *simple*

14  tasks." AR 34 (emphasis added). As stated above, Dr. Boarder testified that Plaintiff suffered

15  impaired concentration and would have moderate limitations in her ability to perform complex and

16  detailed tasks, and deal with normal stress. AR. 66-67. The ALJ found this testimony to be

17  credible and supported by the record. AR 38. Moreover, in his decision, the ALJ gave weight to

18  the opinions of the non-examining physicians who opined that Plaintiff could only "remember and

19  carry out detailed but non-complex instructions." AR 38. Finally, the ALJ relied on Dr. Stevens's

20  statement that Plaintiff experiences "significant brain fog consisting of decreased concentration,

21  lack of focus and short-term memory loss resulting in an inability to sustain work as an

22  occupational therapist," to determine that Plaintiff could not perform her past relevant work. AR

23  39. In other words, the ALJ knew that *pro se* Plaintiff suffered mental limitations. The court finds

24  that, in this case, the ALJ's failed to meet his heightened duty to properly develop the record

25  despite Plaintiff's repeated requests for assistance.

26  While the Commissioner argues that remand is not appropriate for any error to develop the

27  record, the court does not agree. The ALJ's failure to attempt to procure the records places this

28  court in the position of speculating as to whether the missing records contain materials that may,

or may not, have altered the ALJ's decision. The Commissioner argues that without that knowledge the court cannot remand. *See* Def.'s Supp. Br. Doc. 28 at 5-7. However, it was the ALJ's failure to even attempt to gather those records that puts the court in this position. Had the ALJ made reasonable but unsuccessful attempts to get the records the court might reasonably find that Plaintiff failed in her duty to develop the record and remand is not appropriate. But here, *pro se* Plaintiff, on multiple occasions, requested the assistance of the ALJ in gathering records, and the ALJ simply failed to attempt to gather those records. The Commissioner would have the court place the entire burden to develop the record on Plaintiff and ignore the ALJ's failure to meet his burden and heightened duty.

The court finds that the appropriate remedy for the ALJ's error is to remand this action to the Commissioner with instructions for the ALJ to make reasonable attempts to acquire the medical records of Doctors Iglesias, Bermudez, and Cortes. *See e.g.* <u>Miksch v. Massanari</u>, 18 F. App'x 632, 635 (9th Cir. 2001) (remanding for further administrative proceedings where ALJ failed to attempt to secure, or to assist *pro se* Plaintiff in procuring, medical records, and *prior* to the court reviewing the missing records even though they had been provided to the court). The other two issues raised by Plaintiff—whether the ALJ adequately evaluated Plaintiff's severe impairment of chronic fatigue syndrome and whether the ALJ accorded proper weight to the treating physician's opinion—are better left addressed once the record has been completed with regard to Plaintiff's missing medical files and the ALJ is able to review them in relation to Plaintiff's claims.

For the reasons stated above, the court grants Plaintiff's motion for summary judgment, and denies Defendant's motion for summary judgment. Where the record has not been fully developed, where further administrative proceedings would be useful, and where outstanding issues exist that must be resolved before a determination of disability can be made, remand is the appropriate remedy. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). Accordingly, the court reverses the Commissioner's decision and remands the case for further proceedings consistent with this order.

**IT IS SO ORDERED**.

Dated: September 29, 2014

_____
NANDOR J. VADAS
United States Magistrate Judge